## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| QUINCY MYERS, | | No. 4:24-CV-00763 |
| Plaintiff, | | (Chief Judge Brann) |
| v. | | |
| BRANDON WHEELER, | | |
| Defendant. | | |

### MEMORANDUM OPINION

### SEPTEMBER 24, 2024

Quincy Myers filed this complaint alleging that Brandon Wheeler violated Myers' rights by unlawfully arresting him. Wheeler now asks this Court to dismiss the complaint largely on the ground that the evidence demonstrates that probable cause supported Myers' arrest. However, the evidence to which Wheeler cites—an incident report and videotape of Myers' interrogation—goes far beyond what may properly be considered in evaluating a motion to dismiss. And the allegations contained in the complaint are sufficient to support most, but not all, of Myers' claims. The Court will therefore grant in part and deny in part the motion to dismiss.

## I.    BACKGROUND

### A.    Procedural History

In May 2024 Myers filed this complaint alleging that Wheeler, a police officer employed by the City of Williamsport, Pennsylvania, violated Myers civil rights

during an incident in late December of 2023.[1] Myers brings claims of unreasonable arrest (Count 1), the use of excessive force (Count 2), retaliation in violation of the First Amendment of the United States Constitution (Count 3), selective enforcement (Count 4), false arrest and false imprisonment (Count 5), battery (Count 6), and assault (Count 7).[2] Counts 1 through 4 are brought pursuant to 42 U.S.C. § 1983, while Counts 5 through 7 are state law claims.[3]

Presently before the Court is Wheeler's motion to dismiss the complaint.[4] This motion, having been fully briefed,[5] is ripe for disposition. For the following reasons, the Court will grant in part and deny in part Wheeler's motion.

### B.    Facts[6]

In December 2023, Myers, along with his brother and friends, were at a bar in Williamsport, Pennsylvania.[7] At around midnight, Myers exited the bar and joined his friends on a public sidewalk outside.[8] However, as Myers joined his friends, a security guard from the bar "shoved" Myers away from the other individuals.[9] After

---

[1]   Doc. 1.

[2]   *Id.* at 4-7.

[3]   *Id.*

[4]   Doc. 6.

[5]   Docs. 7, 11. Wheeler did not file a reply brief, and the time to do so has now lapsed.

[6]   As discussed below, for purposes of this motion, the Court accepts as true all allegations contained in the amended complaint. *See Fed. Trade Comm'n v. AbbVie Inc*, 976 F.3d 327, 351 (3d Cir. 2020) (in evaluating motion to dismiss court "must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief" (internal quotation marks omitted)).

[7]   Doc. 1 ¶ 6.

[8]   *Id.* ¶¶ 7-9.

[9]   *Id.* ¶ 9.

Myers told the security guard in a "conversational[]" tone that he had no right to put his hands on Myers, the security guard called the police while Myers waited on the public sidewalk.[10]

Within minutes, police officers—including Wheeler—arrived at the bar.[11] Myers began recording Wheeler and asked for Wheeler's badge number and name; Wheeler provided his badge number and stated that his name was Wheeler.[12] Myers asked Wheeler for his given name, to which Wheeler only responded "Wheeler."[13] Myers then asked "[w]hat is your first name, Nigger?"[14] Wheeler became enraged and "threw [Myers] against the police vehicle, handcuffed him, arrested him, and threw him bodily into [Wheeler's] police cruiser."[15] Wheeler indicated that Myers was being arrested for disorderly conduct.[16] Officers also threatened to arrest Myers' brother for recording them and for asking why Myers was being arrested.[17]

Wheeler further "misrepresent[ed] that [Myers] and his brother were 'screaming in the street' when all of their discussions had been at a conversational level."[18] Wheeler then transported Myers to a police station and handcuffed him to a bench for a period of time; Myers was eventually informed that he would be

---

[10]   *Id.* ¶¶ 10-12.
[11]   *Id.* ¶ 13.
[12]   *Id.* ¶¶ 14-15.
[13]   *Id.* ¶ 16.
[14]   *Id.* ¶ 17. Although not legally relevant, Myers is a black man. *Id.* ¶ 1.
[15]   *Id.* ¶ 18.
[16]   *Id.* ¶ 19.
[17]   *Id.* ¶¶ 20-22.
[18]   *Id.* ¶ 22.

released without being charged for any crime.[19] No criminal charges were ever lodged against Myers as a result of the incident.[20]

## II.   LAW

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[21] and *Ashcroft v. Iqbal*,[22] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[23] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[24]

---

[19]   *Id.* ¶¶ 23-24.
[20]   *Id.* ¶ 25.
[21]   550 U.S. 544 (2007).
[22]   556 U.S. 662 (2009).
[23]   *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[24]   *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

### III.   ANALYSIS

Defendants argue that all of Myers' claims must be dismissed. The Court will therefore address each claim in turn.

### A.   Whether Extraneous Documents May be Considered

Before turning to the merits of the motion, the Court must first assess whether it may consider the incident report prepared by Wheeler in connection with the incident and a video recording of Myers taken while he was handcuffed at the police station.[25] Wheeler does not present any actual argument as to why consideration of such evidence may be permissible at this stage, but instead merely cites to law that explains it is permissible to consider indisputably authentic documents upon which the complaint relies, as well as public records.[26] Myers argues, however, that the document and video may not be considered in a motion to dismiss as they are not public records and are not relied upon in the complaint.[27]

It is well established that, in ruling upon a motion to dismiss, courts may "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."[28] A claim is based upon a document when that

---

[25]   Doc. 7 at 12, 14.

[26]   *Id.* at 12 n.1.

[27]   Doc. 11 at 9-13.

[28]   *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

document is "integral to or explicitly relied upon in the complaint."[29] The police report and video provided by Wheeler are not attached to the complaint and may therefore be considered here only if they are public records, or if the complaint is based on those documents. Neither is the case.

First, it is clear that the complaint is not based on these two items. The complaint does not mention or cite to either the police report or video,[30] and therefore those items are "not 'explicitly relied upon' in the Complaint."[31] As to whether those items are nonetheless integral to the complaint, the United States Court of Appeals for the Third Circuit "has not articulated an explicit test to govern when a document is integral to a complaint."[32] Nevertheless, it has "permitted courts to consider such a document if the claims asserted in the complaint depend on its contents, such as when those contents establish the right that the plaintiff claims was infringed or when they constitute the unlawful conduct for which the plaintiff seeks to recover."[33]

Here, neither the police report nor the video of Myers after he was taken into custody are integral to his claims. Myers' claims all depend on the fact that he was

---

[29] *Mator v. Wesco Distribution, Inc.*, 102 F.4th 172, 178 (3d Cir. 2024) (internal quotation marks omitted).

[30] *See* Doc. 1.

[31] *Lepore v. SelectQuote Ins. Servs., Inc.*, No. 22-3390, 2023 WL 8469761, at *2 (3d Cir. Dec. 7, 2023).

[32] *Id.*

[33] *Id.* (citing *Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018); *Freeman v. Redstone*, 753 F.3d 416, 423 (3d Cir. 2014); *Rossman v. Fleet Bank (R.I.) National Association*, 280 F.3d 384, 388 n.4 (3d Cir. 2002); *In re Donald J. Trump Casino Securities Litigation-Taj Mahal Litigation*, 7 F.3d 357, 368 n.9 (3d Cir. 1993)).

arrested absent probable cause in retaliation for protected speech and for discriminatory reasons. These claims arise based on conduct that occurred before and at the time of his arrest, and the police report and video—both of which were created after Myers' arrest—"are inessential to the articulation of [Myers'] claims" and therefore cannot be considered integral to his complaint.[34]

Second, the evidence that Wheeler seeks to utilizes in his motion to dismiss do not constitute public records. As the Third Circuit has noted, "[p]ublic records include criminal case dispositions, letter decisions of government agencies, published reports of administrative bodies, judicial opinions, and hearing transcripts."[35] A police investigative report, "while it may be available to the public, . . . does not fall into any of the categories identified" by the Third Circuit, and therefore cannot properly be considered under the public records exception when evaluating a motion to dismiss.[36] And even less so a video of an interrogation, which likely is not publicly available.

---

[34] *Id.* at *3. *See also Abdul-Ahad v. Essex Cnty. Sheriff's Dep't*, No. CV 20-15602, 2022 WL 1027758, at *6 (D.N.J. Apr. 6, 2022) (holding that regardless of "whether a police officer created an after the fact incident report," plaintiff's claim of deliberate indifference to the need for medical care would still exist, and therefore the incident report was not integral to the complaint); *Purvis v. City of Newark*, No. CV 16-1830, 2017 WL 1032991, at *1 n.1 (D.N.J. Mar. 16, 2017) (refusing to consider at the motion to dismiss stage an incident report related to arrest since plaintiff contested the accuracy of the report).

[35] *Logan v. Bd. of Educ. of Sch. Dist. of Pittsburgh*, 742 F. App'x 628, 632 (3d Cir. 2018).

[36] *Hadesty v. Rush Twp. Police Dep't*, No. CV 3:14-2319, 2016 WL 1039063, at *4 (M.D. Pa. Mar. 15, 2016). *See also, e.g.*, *Abdul-Ahad*, 2022 WL 1027758 at *7; *Kleinz v. Unitrin Auto & Home Ins. Co.*, No. 2:19-CV-01426-PLD, 2020 WL 2113647, at *3 (W.D. Pa. May 4, 2020); *Heller v. Hammerle*, No. 2:20-CV-01656, 2021 WL 3426807, at *4 (W.D. Pa. June 30, 2021), *report and recommendation adopted*, No. CV 20-1656, 2021 WL 3419678 (W.D. Pa. Aug. 5, 2021).

Third, the evidence raises, at best, factual disputes regarding which version of Myers' arrest and the events leading up to it are accurate—Myers' version, or Wheeler's version. And it is well-established that courts may not weigh competing factual narratives at the motion to dismiss stage.[37] For those reasons, neither the police incident report nor the recording of Myers' statements may be considered at this stage.

### B. Unreasonable Arrest, False Arrest, and False Imprisonment Claims

Turning to the merits of Wheeler's motion, Wheeler first argues that Counts 1 and 5, alleging unreasonable arrest under federal law and false arrest and false imprisonment under state law, fail due to the existence of probable cause supporting Myers' arrest.[38] Specifically, Wheeler contends that probable cause existed to arrest Myers for disorderly conduct because Myers: (1) was on a public sidewalk; (2) approached Wheeler's vehicle and yelled at police officers despite being told to back away from the vehicle; (3) was told if he did not leave the area and stop being loud he would be arrested; (4) "yelled in an angry manner 'What's your first name, Nigger'" when Wheeler refused to provide his given name to Myers; and (5) later stated while handcuffed that he should not have acted the way that he had acted.[39]

---

[37] *See, e.g.*, *Abdul-Ahad*, 2022 WL 1027758 at *7; *Brown v. Evans*, No. 1:21-CV-651-SB, 2021 WL 4973630, at *3 (D. Del. Oct. 25, 2021); *Piazza v. Lakkis*, No. 3:11-CV-2130, 2012 WL 2007112, at *4 n.2 (M.D. Pa. June 5, 2012).

[38] Doc. 7 at 9-15.

[39] *Id.* at 13-14.

The parties agree that Myers' claims for unreasonable arrest, false arrest, and false imprisonment rise or fall on the existence—or lack thereof—of probable cause, since an arrest based upon probable cause is permissible and cannot support those claims.[40]

The problem with Wheeler's argument is that is rests almost exclusively on evidence that is beyond the purview of this Court in a motion to dismiss. Most of the "facts" relied upon by Wheeler—and the particular tone and presentation of certain undisputed facts—are contained within the police report and video that the Court cannot consider at this stage of the proceedings. And the facts as alleged in the complaint are certainly sufficient to infer the absence of probable cause.

"Police have probable cause to arrest if the circumstances are sufficient to cause a prudent person to believe that a crime has been committed and the person to be arrested committed it."[41] "Probable cause is determined by the 'totality of the circumstances'" and "'is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.'"[42] Courts "must assess the knowledge and information which the officers possessed at the time of arrest, coupled with the factual occurrences immediately precipitating the arrest in determining if probable cause existed."[43] The

---

[40] *See* Doc. 7 at 9-15; Doc. 11 at 14-16. *See*, *e.g.*, *Lozano v. New Jersey*, 9 F.4th 239, 245 (3d Cir. 2021) ("In a claim for false arrest, a plaintiff must establish (1) that there was an arrest; and (2) that the arrest was made without probable cause" (internal quotation marks omitted)).

[41] *United States v. Stubbs*, 281 F.3d 109, 122 (3d Cir. 2002) (citing *Beck v. Ohio,* 379 U.S. 89, 91 (1964)).

[42] *Id.* (quoting *Illinois v. Gates,* 462 U.S. 213, 230-32 (1983)).

[43] *Id.* (internal quotation marks omitted).

Third Circuit has emphasized that "this standard requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt."[44]

As to the offense in question, disorderly conduct, as relevant here an individual "is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he makes unreasonable noise.'"[45] "'The offense of disorderly conduct is not intended as a catchall for every act which annoys or disturbs people; it is not to be used as a dragnet for all the irritations which breed in the ferment of a community.'"[46] An unreasonable noise is defined "as 'not fitting or proper in respect to the conventional standards of organized society or a legally construed community'"[47] and "'is directed at volume of speech not its content.'"[48] Consequently, in determining whether an individual has made unreasonable noise, "courts look to evidence that the level of noise was inconsistent with tolerance standards of the setting involved."[49]

The allegations sufficiently establish that the volume of Myers' speech was not excessive or unreasonable; indeed, during the entire exchange with Wheeler,

---

[44] *United States v. Burton*, 288 F.3d 91, 98 (3d Cir. 2002) (internal quotation marks omitted).

[45] *Commonwealth v. Rogers*, No. 1104 MDA 2023, 2024 WL 3451841, at *5 (Pa. Super. Ct. July 18, 2024) (quoting 18 Pa.C.S. § 5503(a)(2) (brackets and ellipsis omitted)).

[46] *Id.* (quoting *Commonwealth v. Maerz*, 879 A.2d 1267, 1269 (Pa. Super. Ct. 2005)).

[47] *Id.* (quoting *Commonwealth v. Greene*, 189 A.2d 141, 143 (Pa. 1963)).

[48] *Id.* (quoting *Maerz*, 879 A.2d at 1270).

[49] *Id.* (citing *Maerz*, 879 A.2d at 1270).

Myers' speech "had been at a conversational level."[50] Of course, there could conceivably be moments where even conversational speech would be inappropriate and excessive—for example, during a moment of silence to honor the dead, or during prayers during religious services—the allegations support the notion that conversational speech would be entirely appropriate in Myers' situation, where he was on a public sidewalk outside of a bar's exit.[51]

And while Myers did use an indecent word when requesting Wheeler's first name,[52] that is irrelevant to the determination of whether Wheeler had probable cause to believe that Myers was engaged in disorderly conduct, since an evaluation of excessive noise does not consider content of the speech.[53] Nor would the use of that word qualify Myers' speech as obscene under the statute, since it does not "describe[] a sexual act or appeal[] to one's prurient interest."[54] Lastly, Myers' conduct—asking Wheeler for his first name—cannot rightly be considered tumultuous behavior.

In light of these allegations, it may readily be inferred that nothing Myers did could reasonably be considered disorderly conduct. Consequently, it may also be inferred that Wheeler lacked probable cause to arrest Myers, as no "prudent person"

---

[50]   Doc. 1 ¶ 22.
[51]   *Id.* ¶¶ 8-9.
[52]   *Id.* ¶ 17.
[53]   *Rogers*, 2024 WL 3451841 at *5.
[54]   *Commonwealth v. Bliesath*, No. 1491 MDA 2021, 2022 WL 3134041, at *4 (Pa. Super. Ct. Aug. 5, 2022).

would believe that Myers had committed disorderly conduct.[55] Because the complaint adequately alleges that Myers was arrested absent probable cause, his claims for unreasonable arrest and false arrest/false imprisonment may proceed.

### C.   Excessive Force, Assault, and Battery Claims

Wheeler next asserts that Myers' claims of excessive force, assault, and battery should be dismissed because Wheeler lawfully arrested Myers and used appropriate force to effectuate that arrest.[56] Myers responds that, because the arrest was without probable cause, throwing Myers into a vehicle and handcuffing him constituted excessive force and satisfies the elements of assault and battery.[57]

With regard to Myers' excessive force claim, "[t]o maintain an excessive force claim, a plaintiff must show that a seizure occurred and that it was unreasonable."[58] "The test of reasonableness under the Fourth Amendment is whether under the totality of the circumstances, 'the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations."[59] Determining whether an officer's actions are reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses

---

[55]   *Stubbs*, 281 F.3d at 122.
[56]   Doc. 7 at 16-18.
[57]   Doc. 11 at 16-19.
[58]   *Williams v. City of York, Pa.*, 967 F.3d 252, 259 (3d Cir. 2020) (internal quotation marks omitted).
[59]   *Id.* (internal quotation marks omitted).

an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[60]

"The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[61] Moreover, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."[62]

Myers alleges that, after he twice asked Wheeler in a conversational manner for Wheeler's given name, Wheeler "shouted[] 'No, nigger!' and immediately seized [Myers], threw him against the police vehicle, handcuffed him, arrested him, and threw him bodily into his police cruiser."[63] These allegations support a claim for excessive force.

In the lead up to Myers' unlawful arrest, the allegations establish that he was acting calmly and speaking in a conversational manner to Wheeler. Wheeler did not give Myers the opportunity to be handcuffed and arrested in a non-violent manner; rather, Wheeler immediately grabbed Myers and threw him against the police

---

[60]   *Graham v. Connor*, 490 U.S. 386, 396 (1989).
[61]   *Id.*
[62]   *Id.* at 396-97.
[63]   Doc. 1 ¶ 18; *see id.* ¶¶ 15-17, 22.

cruiser—both completely unnecessary actions under the facts alleged.[64] Wheeler then compounded his errors by throwing Myers "bodily into [Wheeler's] police cruiser" after Myers was handcuffed.[65] Nothing in the complaint would permit the inference that Myers was aggressive, hostile, posed a threat, resisted Wheeler, or in any other way gave cause for the use of force before Wheeler threw Myers into a vehicle, particularly for such a minor offense as disorderly conduct. The Third Circuit has determined that similar behavior by police officers constitutes excessive force, and this claim may therefore proceed.[66]

As to the state law battery claim, in Pennsylvania "battery is defined as a harmful or offensive contact with the person of another."[67] It is well established that "[p]olice officers are privileged to commit a battery pursuant to a lawful arrest, but the privilege is negated by the use of excessive force."[68] As discussed above, the complaint adequately alleges that Wheeler used excessive force in arresting Myers, and therefore Wheeler was not privileged to batter Myers. Moreover, throwing Myers against a vehicle undoubtedly qualifies as harmful or offensive contact, thereby meeting the pleading requirements for a battery claim.

---

[64] Doc. 1 ¶ 18.

[65] *Id.*

[66] *See Bodine v. Warwick*, 72 F.3d 393, 400 (3d Cir. 1995) ("the troopers' conduct—throwing [the plaintiff] around the kitchen and causing his neck to 'crack' while he offered no resistance—was plainly excessive").

[67] *C.C.H. v. Phila. Phillies, Inc.*, 940 A.2d 336, 340 n.4 (Pa. 2008).

[68] *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995).

Finally, "[a]n assault occurs when an actor intends to cause an imminent apprehension of a harmful or offensive bodily contact."[69] Allegations that Wheeler "shouted[] 'No, nigger!' and immediately seized" Myers and "threw him against the police vehicle" satisfy this standard.[70] Consequently, the Court will also deny Wheeler's motion to dismiss Myers' claim of assault.

### D.    First Amendment Retaliation Claim

The Court turns next to Myers' First Amendment retaliation claim. To adequately state such a claim, Myers must allege "that (1) []he engaged in conduct protected by a right in the Constitution, (2) [Wheeler] engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising [his] constitutional rights, and (3) a causal link existed between the protected activity and the retaliatory action."[71]

Myers engaged in protected activity by asking Wheeler questions—specifically inquiring as to Wheeler's first name.[72] The complaint further alleges that Myers was arrested for this protected conduct, and "[t]here is no dispute that an arrest constitutes conduct sufficient to deter a person of ordinary firmness from exercising [his] constitutional rights."[73] Finally, the allegations are sufficient to establish a

---

[69]    *Sides v. Cleland*, 648 A.2d 793, 796 (Pa. Super. Ct. 1994).

[70]    Doc. 1 ¶ 18.

[71]    *Falcone v. Dickstein*, 92 F.4th 193, 205 (3d Cir.) (internal quotation marks omitted), *cert. denied sub nom. Murray-Nolan v. Rubin*, 144 S. Ct. 2560 (2024).

[72]    Doc. 1 ¶¶ 14-18.

[73]    *Falcone*, 92 F.4th at 210 (internal quotation marks omitted).

causal connection between Myers' protected activity and his arrest. Immediately after Myers asked questions of Wheeler and used the n word, Myers was allegedly violently arrested because of that protected conduct.[74] Moreover, as noted previously, the allegations sufficiently demonstrate that there was no probable cause to arrest Myers for disorderly conduct, and it is therefore reasonable to infer that the only reason for Wheeler to arrest Myers was due to Myers' protected speech.

Wheeler nevertheless argues that probable cause negates this claim.[75] While it is true that "the existence of probable cause 'generally defeat[s] a First Amendment retaliatory arrest claim,'"[76] as discussed above, Myers adequately alleges that there was no probable cause for his arrest. Consequently, Wheeler's motion to dismiss this claim must be denied.

### E.  Selective Enforcement

Lastly, Wheeler seeks dismissal of Myers' selective enforcement claim.[77] Specifically, he argues that the complaint fails to adequately allege that Myers was treated any differently than any similarly situated person.[78] Myers responds that he was treated dissimilarly from the security guard at the bar who was of a different race than Myers.[79]

---

[74]  Doc. 1 ¶¶ 14-18, 35-37.
[75]  Doc. 7 at 19-20.
[76]  *Falcone*, 92 F.4th at 210 (quoting *Nieves v. Bartlett*, 587 U.S. 391, 393 (2019)).
[77]  Doc. 7 at 20-21.
[78]  *Id.*
[79]  Doc. 11 at 21-23.

> [To state] a selective enforcement claim under the Equal Protection
> clause of the Fourteenth Amendment, a plaintiff must [allege] that he
> was (1) treated differently from other, similarly situated persons and (2)
> that this selective treatment was based on an unjustifiable standard,
> such as race, or religion, or some other arbitrary factor or to prevent the
> exercise of a fundamental right.[80]

"Persons are similarly situated under the Equal Protection clause when they are alike "in all relevant respects.'"[81] However, "similarly situated does not mean identically situated" and that inquiry "should not demand exact correlation, but should instead seek relevant similarity."[82] Stated differently, courts "must re-frame the question not as whether the two individuals' actions were identical, but whether a juror, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated."[83]

Judged under that standard, Myers has failed to adequately allege a claim of selective enforcement. First, as to differential treatment, Myers now asserts that he was treated differently than the security guard who was also speaking with Wheeler, as Wheeler targeted only Myers for engaging in protected First Amendment activity.[84] But, the complaint itself does not identify the security guard as a proper comparator and does not give sufficient basis to infer that the security guard's and Myers' speech was roughly equivalent. Although the complaint alleges that both

---

[80]   *Harvard v. Cesnalis*, 973 F.3d 190, 205 (3d Cir. 2020) (internal quotation marks omitted).

[81]   *Id.* (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)).

[82]   *Id.* (internal quotation marks omitted).

[83]   *Id.* at 205-06 (internal quotation marks omitted).

[84]   Doc. 11 at 22-23.

Myers "and the security guard began to speak with . . . Wheeler," there is no indication that the security guard continued to engage Wheeler in conversation after an initial greeting. Absent these allegations, it is not possible to conclude that Myers was subjected to selective enforcement.

Furthermore, even if the complaint had adequately alleged selective treatment, this claim also fails at the second prong to the extent that it is based on Myers' race. Although the complaint alleges broadly that the selective treatment was based on race, Myers fails to allege that any other comparator of a different race was treated differently.[85] Consequently, the Court will grant Wheeler's motion to dismiss the selective enforcement claim, although Myers will be given leave to amend his complaint, should he so choose.

### F.    Qualified Immunity

Lastly, as to Wheeler's assertion that he is entitled to qualified immunity,[86] courts "use a two-pronged analysis to evaluate qualified immunity claims."[87] "First, [courts] must decide whether the facts that a plaintiff has shown make out a violation of a constitutional right. And second, [courts] must determine whether the right at

---

[85] *See* Doc. 1 ¶¶ 40-41. The complaint does not provide the race or ethnicity of the security guard.
[86] Doc. 7 at 21-22.
[87] *Anglemeyer v. Ammons*, 92 F.4th 184, 188 (3d Cir. 2024).

issue was clearly established at the time of the defendant's alleged misconduct."[88] Wheeler "bear[s] the burden of persuasion under each prong."[89]

As discussed previously, Myers has adequately stated a claim for a violation of his constitutional rights, with the exception of his claim for selective enforcement. Moreover, under the facts alleged, those rights were clearly established at the time of this incident, and a reasonable officer would have understood that Wheeler's conduct was unconstitutional. With regard to Myers' selective enforcement claim, absent sufficient allegations, it cannot be determined whether qualified immunity is warranted. Accordingly, the Court concludes that Wheeler is not, at this time, entitled to qualified immunity.

## IV.   CONCLUSION

For the reasons stated herein, Wheeler's motion to dismiss is granted in part and denied in part. Myers is given leave to amend his complaint.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[88]   *Id.* (ellipsis and internal quotation marks omitted).
[89]   *Id.*